IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 04-cv-01071-MSK

SAN LUIS VALLEY ECOSYSTEM COUNSEL,
NANCY ALBRIGHT,
JAMES MARTIN,
JERRE GUTHALS,
ANTLERS RIO GRANDE LODGE, INC., a Colorado corporation,
CHARLES C. POWERS,

        Plaintiffs,

v.

UNITED STATES FOREST SERVICE,

        Defendant

and

ALXCHNG, LLC, a Texas limited liability company,
CNXCHNG, LLC, a Texas limited liability company,
RIO OXBOW RANCH, INC., a Colorado corporation,

        Intervenors.

───────────────────────────────────────────────────────────────

**OPINION AND ORDER GRANTING MOTION FOR ATTORNEY'S FEES**
───────────────────────────────────────────────────────────────

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Motion for

Attorney's Fees (**# 134**), the Defendant's response (**# 139**), and the Plaintiffs' reply (**# 140**).

## FACTS

The Court assumes the reader's familiarity with the underlying facts and prior

proceedings in this case, as set forth in the Court's Opinion and Order of May 17, 2007 (**# 116**).

In summary, the Plaintiffs sought review of an administrative determination by the Defendant

1

U.S. Forest Service ("USFS"), approving a swap of certain federally-held lands for certain parcels held in private hands. Although the Plaintiffs asserted six causes of action under various statutes, the Court considered and resolved only the Plaintiffs' contention that the USFS's approval of the swap violated the National Environmental Policy Act ("NEPA"), insofar as the USFS found that the swap would have no significant environmental impact and thus, did not require the preparation of an environmental impact statement.

The Plaintiffs now move **(# 134)** for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504; 28 U.S.C. § 2412. As modified by the Plaintiffs in their reply brief **(# 140)**, the Plaintiffs seek a total award of $ 82,890.70 in fees,[1] representing 505 hours of attorney time, and an additional $ 4,756.63 in costs. The USFS opposes **(# 138)** the Plaintiffs' request, arguing: (i) the Plaintiffs are not "prevailing parties" because the Court remanded the matter to the USFS for further consideration, rather than voiding the swap as requested by the Plaintiffs; (ii) fees are not appropriate because the USFS's position was "substantially justified"; (iii) the hours claimed by the Plaintiffs are unreasonable, and should be reduced for various reasons, including partial success, block billing, failure to exercise billing judgment, and "billings attributable to [counsel's] obvious learning curve," among others; (iv) the rates sought by the Plaintiffs are unreasonable; and (v) the additional costs claimed by the Plaintiffs are not properly awarded.

---

[1]For reasons stated herein, the Court uses the figure calculated by the Plaintiffs based on hourly rates of $ 125, adjusted for inflation, and not the figure calculated by the Plaintiffs based on an hourly rate of $ 200.

## ANALYSIS

The EAJA permits eligible prevailing parties to recover "fees and other expenses incurred by the party" involved in litigation with a federal administrative agency. *Richlin Sec. Services Co. v. Chertoff*, 128 S.Ct. 2007, 2011-12 (2008). To be eligible for an award of fees: (i) the party must be "prevailing"; (ii) the Government's position must not have been "substantially justified"; and (iii) "special circumstances" making an award unjust may not exist; and (iv) the fee request must be made within 30 days of entry of final judgment, supported by an itemized statement. *See Commissioner of the I.N.S. v. Jean*, 496 U.S. 154, 158 (1990). In addition, the party requesting fees must meet the net-worth eligibility criteria set forth in 28 U.S.C. § 2412(d)(1)(D)(2)(B). It appears that only the first two requirements of *Jean* are challenged by the USFS in this action, and the Court will address those issues first.

### A. "Prevailing party"

A party is "prevailing" for EAJA purposes where that party has succeeded on any significant issue in litigation and achieved some of the benefit sought in bringing suit. *See Shalala v. Shaefer*, 509 U.S. 292, 302 (1993), *citing Texas State Teachers Assn. v. Garland Independent School Dist*., 489 U.S. 782, 791-92 (1989). The Court considers the substance of the litigation, rather than the technical disposition of the case, in determining whether a party has substantially achieved the benefits it sought. *Kopunec v. Nelson*, 801 F.2d 1226, 1228-29 (10th Cir. 1986). The USFS offers only an abbreviated argument that the Plaintiffs did not "prevail" in this case. It notes that "the Court has never invalidated" the proposed swap, but instead, deferred to the USFS to more fully consider the proposal on remand. The only other assertion in this

section of the USFS's brief relates to whether the USFS's position was "substantially justified," a question the Court turns to below.

The Court finds that this single-sentence argument is unpersuasive. Regardless of how the Plaintiffs prayed for relief in the Complaint, the nature of an administrative review in this Court is purely a procedural one, examining the procedure by which the USFS made the decision to approve the swap, not the relative merits of that decision. *See e.g. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971). Thus, at best, a decision in the Plaintiff's favor would only result in the Court "set[ting] aside" the USFS's decision, 5 U.S.C. § 706(2)(A), and remanding the issue back to the USFS for additional consideration. In other words, the Plaintiffs obtained all of the relief available to them in this case, even if their Complaint sought more – *i.e.* an order stating that the swap could not be approved – than they could possibly obtain. Under these circumstances, the Court finds that the Plaintiffs are "prevailing parties" in this action.

**B. "Substantially justified"**

Next, the Court turns to the question of whether the USFS's position in this matter was "substantially justified." The USFS's "position" in this matter encompasses both the action taken by the agency in approving the swap, as well as the position taken by the agency in defending against the Plaintiffs' arguments here.[2] *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). The burden is on the USFS to demonstrate that its position in this action was "justified to a degree that would satisfy a reasonable person," and that it "had a reasonable basis

_____

[2]Put differently, an award of fees may be appropriate where the underlying agency action was unjustified, even if the position taken by the agency during the litigation was reasonable. *Hackett*, 475 F.3d at 1174.

4

in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The USFS's position need not reflect a "high degree" of justification, but the agency also cannot avoid fees simply by showing that its position rose some distance above the level of being sanctionable as frivolous. *Id.* at 565-66. The mere fact that the USFS was unsuccessful before this Court does not render its position unjustified; its position could be justified even if it is not ultimately found to be correct. *R.M. Inv. Co. v. U.S. Forest Service*, 511 F.3d 1103, 1109 (10th Cir. 2007).

Here, the Court finds that the USFS's underlying decision to approve the swap was not substantially justified. As the Court's Opinion and Order on the merits explains, the administrative record reveals that the agency's decision suffered from a number of procedural defects, including the failure to consider many environmental impacts resulting from the loss of public access to and the potential development on the Creede Formation, the failure to address the impacts resulting from the loss of public access to lengthy section of the Rio Grande river, and evidence that the USFS prejudged the merits of the swap and gave short shrift to consideration of the environmental impacts in order to approve the swap before appraisals of the various parcels expired, among others. In light of the numerous defects in the USFS's decision-making process, the Court finds that a reasonable person, mindful of the applicable standards, would not have considered the agency's decision to approve the swap to be substantially justified.

Similarly, the Court finds that the USFS has not shown that its litigation position in this matter was substantially justified.[3] USFS's response brief extensively argues a number of issues

---

[3]Because the Court reached the merits of only a single claim, the Court limits its analysis here – whether the USFS's litigation position was substantially justified – to the USFS's position with regard to that single claim. Without having reached the merits of the other issues, the Court

raised by the Plaintiffs' brief on the merits of this issue, but offers relatively little argument as to the reasonableness of the USFS's position with regard to the particular decision-making defects cited by the Court's Opinion. Indeed, the crux of the USFS's argument on this point consists of assertions that a Finding of No Significant Impact requires "only a short statement" to document the agency's finding, and that "the Court had a different analysis" than did the agency. This is not a situation in which the Court found that the agency's statement did not address relevant issues in sufficient detail; this is a situation in which the agency failed to make meaningful findings with regard to matters of clear environmental significance, such as the loss of public access to the Creede Formation, the possible destruction of any scenic value in the Creede Formation, and the loss of public access to a lengthy stretch of the Rio Grande. Without meaningful argument as to how reasonable persons could consider the Finding of No Significant Impact to have adequately addressed the environmental concerns raised in the administrative process, the Court cannot find that the USFS has carried its burden of showing that its litigation position was substantially justified. Accordingly, the Court concludes that the Plaintiffs are entitled to an award of fees.

### C.  Amount of fees

The Court then turns to the question of the appropriate amount of fees to award. In doing so, the Court applies the familiar "lodestar" analysis. *See generally Gisbrecht v. Barnhart*, 535 U.S. 789, 801-02 (2002) ("the 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence"); *Jean*, 496 U.S. at 161. In doing so, the Court makes an

---

cannot express an opinion as to whether the USFS's position with regard to those issues was substantially justified.

initial, or "lodestar," calculation by multiplying a reasonable hourly rate by the number of hours reasonably expended by the attorney(s) on the case. *Id.* at 802; *Hensley v. Eckerhart*, 461 U.S. 424 (1983). Typically, the lodestar figure represents the appropriate amount of fees to be awarded; adjustments to the lodestar figure are made only in unusual situations. *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564-65 (1986).

1. <u>Hourly rate</u>

First, the Court turns to the reasonable hourly rates to be applied. The EAJA requires that the hourly rate selected by "based upon prevailing market rates," but should not exceed $ 125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). The Plaintiffs here request an award of fees calculated at an hourly rate of $ 200, arguing that an increased rate is justified by the fact that: (i) the Plaintiffs' counsel's agreement to take the case on a contingent basis; (ii) the matter involved "a complex area of the law with an inordinate number of applicable statutes, regulations and case law that are peculiar to this area"; (iii) the "prevailing rate for handling such matters" is $ 200 to $ 400 per hour; (iv) the record on appeal in this matter was extensive; (v) there were numerous legal issues to be raised; and (vi) as a result of the other factors listed, the Plaintiffs were unable to retain an attorney willing to perform the work at the presumptive EAJA rate. In addition, the Plaintiffs argue that the Court should apply a cost-of-living increase to the statutory rate, slowly raising the applicable rate from $ 125 for hours billed in 2000-2003 to $ 173 for hours billed in 2008.

The USFS does not oppose the Plaintiffs' request for an adjustment to the approved hourly rate on cost-of-living grounds and apparently concedes that the incremental rate adjustments identified in Exhibit E to the Plaintiffs' motion are acceptable. Beyond that adjustment, the Court rejects the Plaintiffs' arguments that "special factor" warrant an adjustment of the statutory rate beyond cost-of-living increases. The Court summarily rejects the Plaintiffs' argument that the complexity of the case warrants an upward adjustment in the appropriate hourly rate. In *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (10th Cir. 1990), the court rejected a similar argument that the peculiar statutory and regulatory scheme governing Social Security cases constituted a "special factor" warranting adjustment of the statutory EAJA rate:

> the statutory cap may be exceeded only in the "unusual situation" where the legal services rendered require specialized training and expertise unattainable by a competent attorney through a diligent study of the governing legal principles. The law contains a myriad of practice areas; no attorney can be expected to master all areas at once. Yet merely because some scholarly effort and professional experience is required to attain proficiency in a particular practice area does not automatically require enhancement of the EAJA rate. Although Social Security benefits law involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice.

(Citation omitted.) A similar rationale applies here. The various statutes and regulations governing administrative land use decisions might be foreign to the typical general practitioner, but the legal principles at issue are not so complex or unusual that "diligent study" cannot adequately prepare an attorney unfamiliar with this area of the law to address the issues. The Court notes that, typically, the decision to exceed the statutory rate based on a specialized practice area is limited to cases involving, for example, patents or Indian affairs – areas of law

that, this Court notes, are peculiar enough to warrant specialized courts. *See e.g. Pierce*, 487 U.S. at 572; *N.L.R.B. v. Pueblo of San Juan*, 305 F.Supp.2d 1229, 1236-37 (D. N.M. 2003).

The Court also rejects the Plaintiffs' argument that an increased rate is appropriate because other attorneys they consulted demanded rates in excess of $ 300 to handle the action. As the Supreme Court explained in *Pierce,* the EAJA expressly notes that fees should be awarded at "market rates," but that such rates would be capped at $ 125 (formerly $ 75). 487 U.S. 571-72 (statutory language "suggests Congress thought that $ [125] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be"). If the Court were to find that it could increase the hourly rate simply because market rates exceed $ 125 per hour, the $ 125 cap would be rendered superfluous. Accordingly, the Court declines to adjust the appropriate rate based on rates demanded by other attorneys.

The Court also rejects the Plaintiffs' argument that the contingent nature of their fee agreement with their counsel warrants a rate adjustment. Once again, the Supreme Court in *Pierce* considered and expressly rejected this argument. 487 U.S. at 573-74 ("the contingent nature of the fee is also too generally applicable to be regarded as a 'special' reason for exceeding the statutory cap") (internal quotes omitted).

Accordingly, the Court finds that the maximum appropriate hourly rate to be applied in this case is $ 125, plus the annual cost-of-living adjustments as shown in Exhibit E to the Plaintiffs' motion, yielding rates ranging from $ 125 to $ 173.

3. Reasonable hours

Next, the Court turns to the question of the reasonable number of hours expended in this case. In doing so, the Court addresses the USFS's objections to the Plaintiffs' claimed hours as

presenting three major issues: (i) partial success, (ii) inadequate billing, and (iii) non-compensable time. The Court will address each category of objections in turn.

(a). Partial success

First, the USFS seeks as much as a 90% reduction of the number of hours reasonably claimed in this case on the grounds that the Plaintiffs achieved only partial success. *Hensley* explains that where a party has achieved only "partial or limited success," it may be appropriate to disregard the hours expended on unsuccessful claims, even where those claims were "interrelated, nonfrivolous, and raised in good faith." 461 U.S. at 436. At the same time, the Court is mindful that, where numerous alternative legal theories are asserted and only some are successful, a reduction of awardable fees for partial success might be inappropriate where the successful and unsuccessful claims are intertwined or arise from the same core set of operative facts. *Robinson v. City of Edmond*, 160 F.3d 1275, 1282-84 (10th Cir. 1998). Ultimately, the question of "partial success" should be evaluated in light of the degree of success obtained by the Plaintiffs, not necessarily by a mechanical sorting of successful and unsuccessful claims. *Id.* at 1283.

Here, the Court begins its analysis with the observation that whether or not the Plaintiffs' non-NEPA claims were meritorious is a matter that remains unresolved. The Court did not reach the merits of those claims because it was not required to do so, having granted all of the possible relief the Plaintiffs could obtain as a result of the finding that the USFS's decision violated NEPA. Thus, it is difficult to characterize the Plaintiffs as being "successful" or "unsuccessful" on claims that the Court never considered on their merits. More importantly, the Court cannot assess whether the USFS's position with regard to those claims was "substantially justified."

Although the Court can find that the USFS's position with regard to the NEPA claim was not substantially justified, it cannot make that finding with regard to the many other claims asserted by the Plaintiffs without rendering an advisory opinion with regard to those claims. Under these circumstances, the Court finds that it would be inappropriate to award fees for time spent exclusively on claims that were superfluous to the outcome of the case where those claims were legally and factually discrete from the successful NEPA claim.

Some, but not all, of the alternative claims pursued by the Plaintiffs were legally and factually discrete from the successful NEPA claim. The Plaintiffs' alternative claims arose under the Federal Land Policy and Management Act ("FLPMA"), a statute that embodies different statutory and regulatory obligations than NEPA. For example, the Plaintiffs' first claim for relief, which alleged that the swap was predicated upon facially inadequate appraisals, might be cognizable as an improper land use decision under FLPMA, but implicates no environmental impacts sufficient to give rise to NEPA liability. Similarly, the Plaintiffs' fourth claim for relief alleged that the swap was inconsistent with limitations created by the Rio Grande National Forest Plan, again implicating the wisdom of land use decisions, but posing no environmental impacts warranting NEPA consideration. These claims entailed consideration of facts – appraisal values, the terms of the Forest Plan – that were completely irrelevant to the NEPA claim. Thus, the Court finds that some reduction of the Plaintiffs' claimed hours is necessary to reflect a lack of success on (or, more accurately, the surplusage of) these discrete claims.

At the same time, the Court concludes that any such reduction should be relatively small. Although some of the FLPMA claims occupy a discrete factual and legal space, other FLPMA claims asserted by the Plaintiffs are overlap factually and/or legally with the claim asserted under

NEPA. For example, the Plaintiffs' fifth claim, asserting that the loss of scenic views, river access, and access to the Creede Formation violated FLPMA, presented many of the identical factual issues (and some closely-related legal issues) that supported the Plaintiffs' NEPA claim. Other claims, such as the assertion that the USFS violated FLPMA by approving the swap prior to entertaining public comment, touch on factual issues that informed the NEPA claim as well. Most importantly, the fact remains that the Plaintiffs obtained all, or very nearly all, of the relief that was available to them in this proceeding, suggesting that any reduction for lack of success should be minimal. *Robinson*, 160 F.3d at 1283. Thus, under the circumstances, the Court finds that a reduction of the Plaintiffs' claims hours to reflect lack of success should be far less than the 90% reduction urged by the USFS.

Upon careful consideration of the issue, the Court finds that a 15% reduction in total hours would be adequately to eliminate time spent pursuing legally and factually-discrete claims under FLPMA. This figure acknowledges that two of the Plaintiffs' six enumerated claims – the claim challenging the appraisals and the claim challenging compliance with the Forest Plan – bore no arguable relation to the issues underlying the successful NEPA claim. At the same time, a proportionate 33% reduction would not only foolishly attempt to suggest that all of the enumerated claims entailed precisely equivalent effort to present, but would also overlook the fact that all of the claims spring from a common factual record. Regardless of how many claims were asserted, or how many different statutes were invoked, the Plaintiffs' counsel was still required to review, digest, and summarize the entire administrative record. Indeed, mastery of the administrative record would normally be the single most time consuming task in a litigation of this sort; once the factual foundation is established, identifying, researching, and presenting

additional claims requires only incremental expenditures of time.  In addition, the successful

NEPA claim touched on a variety of defects in the decisionmaking process, while the FLPMA

claims relating to appraisals and compliance with the Forest Plan presented much more limited

issues for consideration, suggesting that the bulk of time expended should be deemed

compensable.   Accordingly, the Court will reduce the Plaintiffs' claimed hours by 15% to

exclude hours relating to legally and factually discrete claims that were not considered by the

Court.

(b).  <u>Block billing/billing judgment</u>

Next, the Court turns to challenges to the Plaintiffs' billing records.  Among the

arguments raised by the USFS in this regard are contentions that counsel engaged in

impermissible "block billing," and that counsel failed to exercise "billing judgment" to eliminate

excessive billing for particular tasks.

"Block billing" occurs when an attorney creates a single time entry reflecting the

performance of numerous tasks, making it impossible to ascertain how much time was spent on

each particular task.  *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000).

Block billing is not *per se* fatal to a fee request; it presents a problem only when some of the

listed tasks in a given billing entry are compensable, while other listed tasks are not.  In such

circumstances, the block billing prevents the Court from determining and excising the time spent

on the non-compensable tasks.  *Id.*  (noting that a fee award can encompass block-billed time if

the court can nevertheless determine the time spent on compensable tasks and ascertain that that

time was reasonable).  Where block billing prevents the Court from identifying the reasonable

time spent on a compensable task, the Court may elect to instead engage in a general,

13

proportionate reduction of total hours claimed to ensure that noncompensable time is excluded. *See e.g. Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246, 1263-65 (N.D. Ok. 2004).

The failure to exercise billing judgment touches on an issue related to block billing. Although an attorney might record all hours worked on a particular task, before making a fee request, the attorney is required to winnow out those hours that the attorney would not properly bill to a client – *e.g.* because the attorney was conducting his or her own background research to become familiar with an area of law, or because the attorney recognizes that he or she was inefficient in performing a particular task. *See Case v. Unified School Dist.*, 157 F.3d 1243, 1250 (10th Cir. 1998); *Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983). If the Court finds that counsel failed to exercise billing judgment with regard to the claimed fees and it is impractical to excise the particular offending billing entries, a proportionate reduction of the hours claimed may be appropriate. *Id.*

Here, the USFS points to a variety of billing entries that it contends reflect improper block billing or the failure to exercise billing judgment. *Docket* # 139 at 30-31. The Court agrees that many of the listed entries are problematic. For example, the Plaintiffs' counsel billed 8 hours per day for three consecutive days in May 2004 for either "Research Complaint to District Court" or for "Drafting Complaint and Summons." Whether there are additional tasks concealed within these block entries or counsel simply failed to exercise billing judgment in

reducing an excessive amount of time drafting a simple pleading, the Court finds that the hours claimed for this task is unreasonable.[4]

Although the Court does not necessarily adopt the USFS's argument that travel time is never compensable under the EAJA, *c.f. Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986) ("Costs for travel _expenses_ and postage fees are not authorized") (emphasis added), *citing Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066 (D.C. Cir. 1985) (denying "an award of $711.28 in _costs_ for duplication expenses, taxi fares, messenger services, _travel expenses_, telephone bills"), the Court has some concern that counsel billed more than 36 hours of time for three trips between Creede, Colorado and Denver.[5]  These trips might reasonably have been avoided by counsel requesting to appear at the hearings by telephone.[6]

---

[4]Assuming that a substantial portion of the 24 hours entailed counsel "coming up to speed" on the particular statutory and regulatory framework of FLPMA and NEPA, one might contend that these billing entries are reasonable.  But crediting counsel with the knowledge gleaned from many hours of research into the contours of the substantive law (not to mention consultation with other counsel experienced in this area – time for which the Plaintiffs also seek fees) would render significant amounts of time counsel subsequently billed on other project – *i.e.* substantive briefs and motions – to be unreasonable.  In other words, large amounts of time spent on learning the substantive law early in the case should be reflected in more efficient use of attorney time later in the action.

[5]The Plaintiffs withdrew a request for 12 additional hours of attorney time on a fourth trip to Denver to commence this action.

[6]Appearing by telephone is especially appropriate in cases such as this one, where the only hearings scheduled are procedural and/or non-evidentiary.  *See* MSK Practice Standards (Civil), § III.A.4 ("For non-evidentiary hearings, leave to appear by telephone will be liberally granted").

Without necessarily adopting all of the USFS's contentions, the Court finds that these and other instances[7] in the Plaintiffs' counsel's billing records reflect improper block billing and the failure to exercise billing judgment, requiring a reduction of the hours claimed by the Plaintiffs. The Court finds that the number of objectionable instances is sufficiently numerous that a proportionate reduction is the only efficient means to achieve the necessary reduction.

However, the Court disagrees with the USFS that more than 300 hours – more than half of the hours claimed in the Plaintiffs' revised request – should be eliminated. Although the expenditure of 48 hours drafting the Plaintiffs' opening brief and 40 hours drafting a reply brief are somewhat excessive, the Court cannot say that these and other billing entries should, as the USFS seems to argue, be disallowed in their entirety.[8] Based on all of the circumstances, the Court finds that a proportionate 10% reduction is sufficient to remove unreasonable time attributable to block billing or the failure to exercise billing judgment. With a total of more than 500 hours requested, a 10% reduction reflects excision of more than 50 hours of attorney time. This is adequate to eliminate time spent on some instances of needless travel, reduce the amount of time claimed for arguably unnecessary motion practice, and account for general inefficiency

---

[7]Among other things, the Court finds that numerous billing entries in and about June 2004 refer simply to "Letter to ____," with recipients including John Ashcroft, Ann Veneman, "SLV Ecosystem Counsel," and "Colorado DOW" among others. The nature and contents of these letters, and their relevance to this litigation, is unknown. The Plaintiff also seeks reimbursement for many letters, e-mails, and faxes to co-counsel in this case, the reasonableness of which are highly doubtful.

[8]The USFS's argument is that the block billing precludes the Court from excising time spent briefing the unsuccessful claims. The Court's 15% reduction for partial success is adequate to resolve this problem regardless of the block billing.

without depriving the Plaintiffs of compensation for tasks that are arguably within the scope of professional representation in the circumstances of this case.

(c). <u>Non-compensable work</u>

Finally, the Court turns to the USFS's argument that certain billing entries claimed by the Plaintiffs are for services that are not properly compensable. USFS primarily argues that: (i) time spent in the administrative process is not compensable; (ii) time spent by the Plaintiffs responding to matters raised exclusively by the Intervenors, not the USFS, is not compensable; and (iii) some of the time entries claimed by the Plaintiffs are clerical in nature or otherwise identify tasks that are not billable.

Turning first to the argument that fees are not properly awarded for time spent in pre-litigation procedures before the agency, the Plaintiffs concede on reply that time spent during the administrative process prior to litigation is not billable, and have withdrawn those billing entries from their revised request. *Melkonyan v. Sullivan*, 501 U.S. 89, 94 (1991); *see also Blakley v. U.S.*, 85 Fed.Cl. 360, 373-74 (Fed. Cl. 2008) ("Section 2412 authorizes the award of fees and costs only in a 'civil action ... in any court having jurisdiction of such action,' not for administrative proceedings"). The Court need not consider this issue further.

Next, the USFS contends that the Court should exclude 18.4 hours of time as reflecting work dedicated to responding to claims raised by the Intervenors, not the USFS. There is conflicting caselaw on the issue of whether an EAJA award should include fees incurred by the prevailing party in litigating issues raised solely by intervening parties. *Association of American Physicians and Surgeons, Inc. v. U.S. Food and Drug Admin.*, 391 F.Supp.2d 171, 179-81 (D. D.C. 2005) (fees should be awarded), *citing Love v. Reilly*, 924 F.2d 1492, 1495-96 (9th Cir.

17

1991) (fees should not be awarded). This Court finds that decision in *American Lung Assn. v. Reilly*, 144 F.R.D. 622, 629 (E.D.N.Y. 1992), persuasive. There, the court concluded that it may be appropriate to award fees to a prevailing party for time spent opposing arguments by intervenors upon which the agency took no position, because the agency and the intervenor were aligned in interest. *Id.* Where the intervenors attempt to accomplish a goal that benefits the agency as well, it would be inappropriate to deny fees to the prevailing party simply because the agency has the luxury of deferring to the intervenor's request for relief; in a two-party action, the agency itself would have to act to enjoy that relief, and there is little justification for awarding fees in one instance and not the other. Accordingly, absent a showing by the USFS that the cited time entries involved positions taken by the Intervenors that were adverse to the USFS's interests, the Court declines to exclude these time entries.

Finally, the Court turns to several billing entries that the USFS contends should have been delegated to clerical or other non-attorney personnel. Purely clerical work is not generally compensable on a fee application. *See Missouri v. Jenkins*, 491 U.S. 274, 282-84 (1989). The USFS identifies only a handful of specific entries that it contends fall into this category, including entries for "taking pictures of properties" (10/1/04, 1.5 hours); "uploading photos and maps" (10/6/04, 1 hr.); "e-mail photo album" (10/7/04, .1 hrs.); "uploading pictures" (10/8/04, .5 hrs.); and "obtaining prints of online photos" (10/14/04, .3 hrs.). Although the Court finds these specific tasks are not compensable, the Court does not go on to adopt the USFS's additional argument that other entries reading "Fax to ____" or "letter to ____" necessarily reflect attorney time spent on clerical tasks. There is no reason to assume that "letter to ____" means the clerical task of typing or mailing the letter, rather than the attorney task of drafting the letter. At

best, the USFS has identified 5 hours worth of billing entries reflecting clerical work, and the Court will exclude $ 625 (5 hours x $ 125/ hr.) to reflect time spent on clerical tasks.

### D. Calculating the lodestar

Based on the foregoing, the Court calculates the lodestar figure as follows:

- Plaintiffs' revised request:     $ 82,890.70
- less $ 625 (clerical tasks)     $ 82,265.70
- less 10% (block billing/judgment)  $ 74,039.13
- less 15% (partial success)     $ 62,933.26

Upon consideration of all the facts and circumstances in this case, the Court finds that a fee award of $ 62,933.26 is reasonable. The parties do not contend that adjustments to this lodestar figure are appropriate, and thus, the Court grants the Plaintiffs' motion in part, awarding fees in the amount of $ 62,933.26.

### E. Costs

The Plaintiffs seek an award of $ 4,756.63 in costs. This request breaks down into three major categories: (i) online legal research; (ii) travel expenses; and (iii) photocopying and communications expenses.

Online legal research expenses are generally awardable as costs under the EAJA. *JGB Enterprises, Inc. v. U.S.*, 83 Fed.Cl. 20, 34-35 (Fed. Cl. 2008). The USFS complains that the Plaintiffs' bills do not indicate the matters researched for each entry, making it impossible for the Court to determine that the research was relevant to this action. The Court notes that the same argument was raised in *JGB Enterprises* and rejected by the court, which found that the legal research entries were listed by date, and could be tied to attorney billing entries that described the tasks being performed when the research was conducted. The court in *JGB* accounted for unnecessary legal research by simply reducing the amount claimed for online research by the

same proportion that it reduced the reasonable hours to reflect partial success. The Court finds that practice sound, and reduces the $ 1,853.98 requested for legal research costs by 15%, yielding an award of $ 1,575.88.

As to travel expenses, the USFS contends that such expenses are not recoverable under the EAJA. *Weakley*, 803 F.2d at 580. The Plaintiffs do not offer any response to this argument, and in the absence of argument to the contrary, the Court finds that such expenses are not recoverable as costs.

Finally, the USFS challenges the Plaintiffs' request for costs of photocopying, fax transmission, long distance calling, postage, and other miscellaneous expenses. In *Ramos*, the 10th Circuit explained that "some firms separately itemize and bill long distance telephone charges, copying cots, and some other expenses," and that "these kinds of expenses should be allowed as fees only if such expenses are usually charged separately in the area." 713 F.2d at 559. As the party seeking the award of these costs, the burden is on the Plaintiffs to show that copying and telephone costs, among others, are typically charged separately to clients in the local market, rather than being absorbed into a firm's overhead. The Court has consulted the Plaintiffs' counsel's affidavits in support of both the motion and reply, and neither one makes any reference to the practice of local firms regarding the billing of photocopying, telephone, and other incidental expenses. Absent such a showing, the Court declines to award these costs.

In the absence of specific objection by the USFS to a handful of remaining miscellaneous expenses (*e.g.* $ 286 for a hearing transcript; $ 63.66 for a "HuntData LLC -Big Game CD," etc.), the Court awards those as costs.

Accordingly, the Court awards the Plaintiffs costs as follows:

- Initial request          $ 4,756.63
- less 15% of legal research amount   ($ 278.10)
- less travel expenses        ($ 757.28)
- less copying/phone/postage, etc.   ($ 1,308.52)

- total costs awarded        $ 2,412.73

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Attorney's Fees (**# 134**) is **GRANTED IN PART**, insofar as the Court awards attorneys fees against the Defendant in the amount of $ 62,933.26, and costs in the amount of $ 2,412.73, and **DENIED IN PART**, insofar as the Court declines to award amounts in excess of these sums. The Defendant shall make payment of these amounts to the Plaintiffs within 30 days of the date of this Order, or such other time as the parties may agree. If timely payment is not made, the Plaintiffs may apply to this Court for entry of a judgment against the Defendant in this amount.

Dated this 23rd day of March, 2009

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge